

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL DAMEION THURMOND,<br>Petitioner | )<br>)<br>)<br>) | No. 07 C 1779 |
| v. | )<br>)<br>) | The Honorable William J. Hibbler |
| DONALD GAETZ[1],<br>Respondent. | )<br>)<br>) | |

## MEMORANDUM OPINION AND ORDER

Dameion Thurmond petitions this Court under 28 U.S.C. § 2254, alleging a number of constitutional claims, most of which center on the effectiveness of his counsel and Thurmond's contention that the state used perjured testimony to obtain his conviction. For the reasons stated herein, the Court DENIES Thurmond's petition.

1. Procedural Background

An Illinois jury convicted Thurmond of first degree murder and aggravated criminal sexual assault. Testimony at Thurmond's trial revealed that he attended a party, where he had an argument with another attendee, Angela Westerfield. After the host of the party asked everyone to leave the apartment, Thurmond returned, threatened two men who remained at the apartment with a pen or a screwdriver until they left Thurmond and Westerfield alone in the apartment. One of the men, Jason Burrell, testified that shortly after leaving the apartment, he encountered Thurmond who told him "now

---

[1] Donald Gaetz is currently the Warden at the Menard Correctional Center, where Thurmond is incarcerated, and is thus the proper respondent in this *habeas* action. *See* Rule 2(a) of the Rules Governing *habeas corpus* cases under 28 U.S.C. § 2254. This court hereby substitutes Donald Gaetz as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

1

you know a real killer from the Chi." The other man, Vincent Huaymave, testified that after asking Thurmond about Westerfield's death, he admitted that "he might have done that to her."

Thurmond later gave a written statement to the state in which he admitted arguing with Westerfield because he was angry that she had not left the party, having sexual intercourse with her, slapping her and choking her when she "decided to stop," hitting her with a board and choking her in retaliation for the victim's attempt to cut him with a pocketknife, and stabbing her 7 to 10 times with a screwdriver. The state presented forensic evidence that corroborated the witness testimony and Thurmond's statement.

The state appellate defender moved to withdraw as appellate counsel, submitting an *Anders* brief in support of the motion. Thurmond responded to the motion, raising numerous due process and ineffective assistance of counsel claims. Thurmond claimed that the state violated his due process rights by using the false testimony of several witnesses (Burrell, Huaymave, Detective Lawrence Aikin, and forensic examiner Deborah Minton). Thurmond also claimed that the state suppressed exculpatory fingerprint evidence, was inattentive to significant DNA evidence, and maliciously prosecuted him. Thurmond argued that his counsel was ineffective in stipulating to the fingerprint evidence and failing to impeach two witnesses (Aikin and a second forensic examiner, Karen Kooi). The Illinois Appellate Court affirmed Thurmond's conviction and sentence.

Thurmond then petitioned the Illinois Supreme Court for leave to appeal, challenging his counsel's failure to inform him of fingerprint evidence and the state's use of the testimony of Minton, Burrell, and Kooi. The Illinois Supreme Court denied his petition.

Thurmond repeated the claims in his petition for leave to appeal in his postconviction petition before the state court. After the state trial court denied the postconviction petition, Thurmond appealed, raising an entirely new claim: that counsel was ineffective in failing to impeach Aiken's testimony

during a suppression hearing. The state appellate court noted that he had abandoned the claims raised in his postconviction petition and had forfeited the claim he raised on appeal by failing to raise it in his petition. The Illinois Supreme Court denied leave to appeal.

## II. Procedural Default

Thurmond then filed this *habeas* petition rasing ten claims, most of which are procedurally defaulted. Thurmond claims that his due process rights were violated when the state used the false testimony of Aikin, Burrell, Kooi, and Minton (Claims 1, 6, 7, and 8). Thurmond also claims that trial counsel was ineffective in failing to impeach Aikin, Kooi, and Burrell and also in not informing him about potentially exculpatory fingerprint information. (Claims 2, 4, 5, and 3). Finally, Thurmond claims that his due process rights were violated by the trial court's refusal to allow trial counsel to impeach Burrell and the prosecutor's closing arguments.

In order to raise a constitutional challenge to a state court conviction and sentence in a federal *habeas corpus* proceeding, a petitioner seeking *habeas corpus* relieve must have fully and adequately presented his challenge to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In so doing, a petitioner must place both operative facts and controlling legal principles before the state court. *Badelle v. Correll*, 452 F.3d 648, 661 (7th Cir.2006). Moreover, a petitioner must pursue a discretionary appeal to the state's highest court, in this case the Illinois Supreme Court, to avoid procedural default barring federal *habeas corpus* review. *Boerckel*, 526 U.S. at 845; *Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir.2002). In other words, a *habeas corpus* petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845.

3

In addition, federal courts may not review constitutional claims where the state court decision relies upon an adequate and independent state procedural ground. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir.2002). For example, waiver is an adequate and independent ground under state law that can preclude federal *habeas* review. *Harris v. Reed*, 489 U.S. 255, 258, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In the event of a procedural default, a petitioner can overcome the bar to federal *habeas* review if he can demonstrate: a) cause for the default and prejudice resulting from the constitutional errors or b) a fundamental miscarriage in justice, which in a non-capital case exists where the constitutional violation probably has resulted in the conviction of one who is actually innocent. *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). To demonstrate cause, the petitioner must show that some factor external to the defense impeded his ability to comply with the state procedure. *Guest v. McCann*, 474 F.3d 926, 930 (2007).

Thurmond presented only four claims to the Illinois Supreme Court: that the state used the false testimony of Minton, Kooi, and Burrell[2] and that his trial counsel was ineffective in inform him of potentially exculpatory fingerprint evidence. Thurmond makes no argument that cause prevented him from presenting the other claims to the Illinois Supreme Court. Instead, he argues, cursorily, that failure to consider them will result in a fundamental miscarriage of justice. Thurmond presents no facts in support of this claim that would support a conclusion that he is "actually innocent" of the crime for which he was convicted. Consequently, the Court finds that Thurmond has procedurally defaulted all of his claims but for the four mentioned above.

---

[2] In his *habeas* petition Thurmond refers to both Burrell's testimony that Thurmond told him "now you know the real killer from the Chi" and an inconsistency between Burrell's testimony at trial and before the grand jury. Thurmond did not present the operative facts of the former claim to the Illinois Supreme Court and so it is procedurally defaulted.

4

III. Discussion

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) sets forth the standard under which federal courts review *habeas* claims. 28 U.S.C. § 2254(d). Under the AEDPA, a court may grant a *habeas corpus* petition only where the state court's judgment is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); *Simonson v. Hepp*, 549 F.3d 1101, 1105 (7th Cir. 2008). A state court decision is "contrary to" Supreme Court precedent if it applies a rule that conflicts with that precedent or reaches a different result on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal principle but unreasonably applies it to the facts of the case before it. *Id.* This requires more than a showing that the state court decision is incorrect; it must be unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

The State's knowing use of false evidence may violate due process. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The state's utilization of false testimony, in and of itself, does not violate a defendant's due process rights. To violate due process, the state must know of the testimony's falsehood and the false testimony must have been reasonably likely to affect the judgment of the jury. *Agurs*, 427 U.S. at 103, 96 S.Ct. 2392. Mere inconsistencies in a witness's testimony are insufficient to demonstrate testimony is false, and instead speak to the witness's credibility. *Simental v. Matrisciano*, 363 F.3d 607, 615 (2004); *United States v. Magana*, 118 F.3d 1173, 1193 (1997). Rather, the false testimony must be directly related to the defendant's guilt or innocence, and not on a collateral matter. *Simental*, 363 F.3d at 615; *United States v. Adcox*, 19 F.3d 290, 295 (1994). Finally, if the

5

defendant had an ample opportunity to cross-examine the witness and expose the perjury, it is unlikely that the false testimony impacted the jury's verdict. *Simental*, 363 F.3d at 615.

A *habeas* petitioner raising an ineffective assistance of counsel claim must demonstrate that the state court's decision violates the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a defendant must show that his lawyer's performance fell below an objective standard of reasonableness and that but for the lawyer's performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 694. Under the AEDPA, the petitioner must show that the state court's application of *Strickland* not only was incorrect, but that it was unreasonable, lying well outside the boundaries of permissible differences of opinion. *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008).

Counsel has a duty to undertake reasonable investigations or make a reasonable decision that makes such investigation unnecessary. *Davis v. Lambert*, 388 F.3d 1052, 1062 (7th Cir. 2004). It is not sufficient, however, to demonstrate that counsel failed to investigate potential evidentiary avenues. A *habeas* petitioner must overcome the presumption that the decision might be a sound matter of trial strategy, based on the theory of the defense or other available evidence. *Id.* at 1063.

A. Testimony of Minton

Thurmond's argument that the state knowingly placed the perjured testimony of forensic expert Deborah Minton before the jury is factually unfounded. Thurmond argues that Minton's laboratory report indicates that the only genetic material recovered from a denim jacket at the crime scene contains the DNA of the victim and an unidentified male, but that at trial Minton testified that the jacket contained a "partial match" of Thurmond's DNA. In reviewing this claim, the Illinois Appellate Court noted that although the laboratory report lacks a specific identification of Thurmond, "the genetic

profile charts attached to the laboratory report expressly corroborate Minton's statement that she identified a partial match of [Thurmond's] genetic profile" on the jacket. Thurmond has done nothing to refute this factual finding by the state court, which this Court must presume as correct. *Araujo v. Chandler*, 435 F.3d 678, 682 (2005).

Even discounting the state court's finding that Minton's testimony is not, in fact, false, the discrepancy relied upon by Thurmond at best amounts to an inconsistency, which as noted earlier is insufficient to establish the falsehood of Minton's testimony (let alone the state's knowing use of it and its materiality). Moreover, Thurmond had the opportunity to cross-examine Minton to explore the discrepancy and to test her credibility before the jury. The state court's refusal to grant a new trial on this basis does not amount to an unreasonable application of Supreme Court precedent.

B.  Testimony of Kooi

Thurmond next argues that another forensic expert, Karen Kooi, testified falsely. Thurmond argues that Kooi testified in "half-truths" when she failed to explain that she found DNA from an unidentified person underneath the victim's fingernails in addition to that of the victim and the defendant, as she had in her laboratory report. Again, the state court rejected the factual premise of Thurmond's argument, and he has done nothing to refute this finding. The state court noted that Kooi's laboratory report indicated that "small amounts of additional genetic material were detected but were unsuitable for comparison" and that Thurmond mischaracterized the contents of the report. Further, as with Minton's testimony, Thurmond had the opportunity to cross-examine Kooi and require her to explain the alleged discrepancy between her laboratory report and her testimony. Thurmond has not demonstrated that Kooi made a false statement and the state court's adjudication of his perjury claim therefore cannot be an unreasonable application of Supreme Court precedent.

C.  Testimony of Burrell

Thurmond's final argument related to allegedly false testimony relates to that of Jason Burrell. Thurmond argues that Burrell committed perjury when he testified at trial that he saw Thurmond with no weapon other than a knife after informing the grand jury that he had seen Thurmond with more than one weapon. The state appellate court noted that the discrepancy between Thurmond's grand jury and trial testimony was merely an inconsistency and found no merit to his claim. As noted earlier, a mere inconsistency is insufficient to support a claim that the use of perjured testimony warrants a new trial. Moreover, Thurmond admitted that he stabbed the victim with a *screwdriver*, and not a knife. If anything, any inconsistency in Burrell's testimony therefore aids Thurmond, rather than implicates him in the crime (as the forensic evidence suggested that the victim suffered multiple wounds consistent with those caused by a screwdriver). In any event, given that Thurmond had the opportunity to cross-examine Burrell and undermine his credibility, the minor discrepancy in his recollection of the weapons in Thurmond's possession relates to a collateral matter and the state court's application of federal law was not unreasonable.

D.  Ineffective Assistance of Counsel

Thurmond's final non-defaulted claim is that his counsel failed to discuss or investigate potentially exculpatory fingerprint evidence. Thurmond argues that counsel should not have stipulated that a latent fingerprint on a butcher knife was his and instead investigated a second, but unidentified, latent fingerprint contained on the knife to implicate another person as the murderer.

The state court held that trial counsel's decision not to discuss with Thurmond the fingerprint evidence that existed on the butcher knife and to instead stipulate that the knife contained his fingerprint was a matter of trial strategy. The state court offered no rationale in support of this conclusion, but a review of the evidence demonstrates that the state court's application of the law to the facts was reasonable. The coroner concluded that the victim died from strangulation and not from

any stab wounds that she suffered. Moreover, Thurmond admitted to the police that he choked the victim and stabbed her with a screwdriver. Finally, forensics experts testified that the victim suffered numerous cross-shaped puncture wounds on the neck, consistent with being stabbed by a screwdriver (which contained only Thurmond's fingerprint). Trial counsel could reasonably have concluded that it waste time and resources to search for the identity of the person whose latent print appeared on the knife when the knife was not the murder weapon. Trial counsel also could reasonably have concluded that the latent fingerprint on the knife was not valuable for impeachment because Thurmond had admitted to the police that he had choked the victim and stabbed her with a screwdriver.

The Court concludes that Thurmond has failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim constitutes an unreasonable application of Supreme Court precedent.

For the foregoing reasons, the Court DENIES Thurmond's petition for a writ of *habeas corpus*.

IT IS SO ORDERED.

1/21/09
Dated

Hon. William J. Hibbler
United States District Court